FILED
*January 7, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00413-CR
3588264
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/24/2014 10:35:08 AM
JEFFREY D. KYLE
CLERK

**Court of Appeals No. 03-14-00413-CR**
**Trial Court Cause No. 5797**

# IN THE THIRD SUPREME JUDICIAL DISTRICT

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/29/2014 12:00:00 AM
JEFFREY D. KYLE
Clerk

# COURT OF APPEALS

# AUSTIN, TEXAS

_____

## *PRISCILLA AGUILAR HERNANDEZ*

*v.*

## *THE STATE OF TEXAS*
_____

## APPEALED FROM THE 452ND JUDICIAL DISTRICT COURT, MCCULLOCH COUNTY, TEXAS
**Honorable Robert R. Hofmann, Presiding**

_____

## *APPELLANT'S BRIEF*
_____

**M. Patrick Maguire**
**State Bar No. 24002515**
**M. Patrick Maguire, P.C.**
**mpmlaw@ktc.com**
**945 Barnett Street**
**Kerrville, Texas 78028**
**Telephone (830) 895-2590**
**Facsimile (830) 895-2594**

*ATTORNEY FOR APPELLANT,*
*PRISCILLA HERNANDEZ*

*ORAL ARGUMENT REQUESTED*

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL                    2

INDEX OF AUTHORITIES                             4

STATEMENT OF THE CASE                            6

ISSUES PRESENTED                                 7

SUMMARY OF THE ARGUMENTS                         8

CERTIFICATE OF COMPLIANCE WITH TRAP 9.4          9

STATEMENT OF FACTS                               10

ARGUMENTS & AUTHORITIES                          10

ISSUE 1:    The jury's negative answer to the sudden passion issue in the trial court's punishment charge is against the great weight and preponderance of the evidence, i.e., factually insufficient.          13

ISSUE 2:    The jury's negative answer to the self-defense issue in the trial court's charge at the guilt/innocence stage of the trial is against the great weight and preponderance of the evidence, i.e., factually insufficient.
                                                 19

PRAYER FOR RELIEF                                24

CERTIFICATE OF SERVICE                           25

# IN THE THIRD SUPREME JUDICIAL DISTRICT

# COURT OF APPEALS

# AUSTIN, TEXAS

_____

## *PRISCILLA AGUILAR HERNANDEZ*

*v.*

## *THE STATE OF TEXAS*
_____

## *IDENTITY OF PARTIES & COUNSEL*
_____

*Appellant certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this appeal:*

Appellant:               Priscilla Aguilar Hernandez

Appellee:                The State of Texas

Attorney for Appellant:   M. Patrick Maguire
                         M. Patrick Maguire, P.C.
                         945 Barnett Street
                         Kerrville, Texas 78028

Attorney for Appellee:    Hon. Tonya Spaeth Ahlschwede
                         452nd Judicial District Attorney
                         P.O. Box 635
                         Mason, Texas 76856

Trial Judge:                        Hon. Robert R. Hofmann
452nd Judicial District Judge
P.O. Box 1580
Mason, Texas 76856

# INDEX OF AUTHORITIES

## *CASES*

*De Leon v. State*,
373 S.W.3d 644 (Tex. App.—San Antonio 2012, pet. ref'd)      13,14, 16,17

*Meraz v. State*, 785 S.W.2d 146 (Tex. Crim. App. 1990)      14

*Saxton v. State*, 804 S.W.2d 910 (Tex. Crim. App. 1991)      19,20, 23

*Zuliani v. State*, 97 S.W.3d 589 (Tex. Crim. App. 2003)      19,20, 23

4

# *STATUTES AND RULES*

*Tex. Penal Code §9.01*                                    21

*Tex. Penal Code §9.31*                                    21

*Tex. Penal Code §9.32*                                    21

*Tex. Penal Code §19.02*                                   13

## STATEMENT OF THE CASE

Appellant, Priscilla Aguilar Hernandez, is appealing her conviction for the offense of murder. Appellant pled not guilty to a jury on May 20, 2014. RR 3, 12. The jury found Appellant guilty and sentenced her to 30 years confinement in the Texas Department of Criminal Justice – Institutional Division on May 23, 2014. RR 6, 70. Appellant timely filed her notice of appeal in the trial court. This brief is timely filed by being electronically filed in the Third Court of Appeals on December 24, 2014.

## *APPELLANT'S ISSUES PRESENTED FOR REVIEW*

**I.** The jury's negative answer to the sudden passion issue in the trial court's punishment charge is against the great weight and preponderance of the evidence, i.e., factually insufficient.

**II.** The jury's negative answer to the self-defense issue in the trial court's charge at the guilt/innocence stage of the trial is against the great weight and preponderance of the evidence, i.e., factually insufficient.

**\*\*** For purposes of reference in the Appellant's Brief the following will be the style used in referring to the record:

1. Reference to any portion of the Court Reporter's Statement of Facts will be denoted as "(RR____, ____)," representing volume and page number, respectively.

2. The Transcript containing the District Clerk's recorded documents will be denoted as "(CR___, ___)."

## *SUMMARY OF THE ARGUMENTS*

**I.**    The evidence is factually insufficient to support the jury's negative finding on the sudden passion issue contained in the trial court's charge on punishment.

**II.**    The evidence is factually insufficient to support the jury's rejection of Appellant's self-defense claim.

## *CERTIFICATE OF COMPLIANCE*

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I certify that this brief contains 4,000 words (counting all parts of the document and relying upon the word count feature in the software used to draft this brief). The body text is in 14 point font and the footnote text is in 12 point font.

/s/     M. Patrick Maguire
M. Patrick Maguire,
Attorney for Appellant

## STATEMENT OF FACTS

On December 25, 2010, Appellant and her husband, Jimmie Joe Hernandez ("Jimmie"), had been drinking heavily. RR 3, 91; RR 3, 194. They, along with other family members, had been to a Christmas dance held in Menard, Texas.[1] RR 3, 195. In the early morning hours of December 26, 2010, Appellant and Jimmie got into an argument over Appellant seeing another man. RR 3, 195-96. Appellant left the dance with Jimmie's parents who drove Appellant to her house in Menard. RR 3, 196. Jimmie walked home from the dance. RR 3, 196.

After arriving home, Appellant left the house to walk back and find Jimmie. RR 3, 196-97. When she found him, the two got into a physical altercation. RR 3, 197. Jimmie spit on Appellant's face, broke her cell phone, and somehow in the altercation, pulled one of her boots off. RR 3, 196-97. Appellant returned to the house. Appellant's brother, Justin Stone, was passed out on a sofa in the house. RR 3, 197. Mr. Stone's girlfriend, Staci Leach (also known as "Nellie"), was sleeping on the other sofa. RR 3, 96. Staci awoke to Appellant coming in the door with Jimmie following right behind Appellant. RR 3, 96. Appellant woke Staci up and said that Jimmie had hit her and Appellant was yelling at Jimmie because her boot

---

[1] The offense occurred in Menard County, Texas. Venue was transferred to McCulloch County, Texas where the case was tried.

10

was missing. RR 3, 96. Appellant also had spit on her eyebrow with a little bit of blood in it. RR 3, 96. Staci asked Jimmie if Jimmie had hit Appellant and Jimmie denied hitting her. RR 3, 96. Staci attempted to get Appellant's brother to wake up. RR 3, 96.

Meanwhile, Appellant and Jimmie were arguing in the kitchen (which was directly adjacent to the living room where Staci and Appellant's brother were sleeping) and Appellant picked up a pan and struck Jimmie multiple times in the head with it. RR 3, 96. According to Staci, Appellant turned and grabbed a handful of knives out of a drawer or on the counter. RR 3, 97. The argument continued into the living room and Staci said that Appellant threw one knife at Jimmie and it stuck in the floor. RR 3, 98. Staci said that Jimmie picked the knife up by the blade, handed the knife back to Appellant, and told Appellant, "you missed me, Bitch, try again." RR 3, 98. Staci said that Jimmie and Appellant were very close to one another and Appellant said something to Jimmie and when she turned around to walk away, Jimmie told Appellant to "go fuck another kid." RR 3, 98. At that point, Appellant turned around and stabbed Jimmie in the chest. RR 3, 98-99. According to Staci, Appellant then backed up and said "ha, Bitch." RR 3, 99. Jimmie then pulled the knife out of his chest and threw it on the ground and said

11

"don't call the cops." RR 3, 100. Jimmie walked out the door and collapsed outside on the edge of the street. RR 3, 100.

Appellant ran up to Jimmie and grabbed his arm, apparently trying to get him up. RR 3, 101. Appellant was hysterical and saying she was sorry over and over. RR 3, 124-25. Jimmie died shortly thereafter.

## ARGUMENTS & AUTHORITIES

### I.
### *The jury's negative answer to the sudden passion issue in the trial court's punishment charge is against the great weight and preponderance of the evidence, i.e., factually insufficient.*

**A.      *Standard of Review***

At the punishment phase of a trial, a defendant found guilty of murder may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. *See Tex. Penal Code §19.02(d)*. If the defendant proves the issue by a preponderance of the evidence, the murder is reduced to a second degree felony. *Id*. "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed." *Id. §19.02(a)(2)*. "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id. §19.02(a)(1)*.

Sudden passion must arise at the time of the offense and cannot result solely from former provocation. *De Leon v. State*, 373 S.W.3d 644, 650 (Tex. App.—San Antonio 2012, pet. ref'd). Moreover, neither ordinary fear nor anger alone is sufficient to establish sudden passion. *Id*. When a defendant seeks appellate review of a failure to make a finding on which the defendant has the burden of proof, like sudden passion, the appellate court

13

must apply a factual sufficiency standard of review. *Id.* Accordingly, the appellate court will review all of the evidence in a neutral light and determine whether the jury's failure to find sudden passion is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id*. at 651. (citing <u>*Meraz v. State*</u>, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990)).

**B.    *Analysis*****

It was undisputed that Appellant and Jimmie were intoxicated and in the midst of a very heated argument when Appellant stabbed Jimmie. In cases where appellate courts have upheld a jury finding rejecting the "sudden passion" defense, there are typically facts to indicate some reflection on the defendant's part that showed some (even very brief) premeditation that mitigate against a sudden passion finding. This could be a statement or an action by the defendant. However, in this case, there are no facts that indicate any premeditation on Appellant's part.

Staci Leach's testimony is crucial on this point. It is apparent that Staci was not a witness who was sympathetic towards Appellant. At one point in Staci's testimony, she refused to even look at Appellant when asked to identify her. RR 3, 113-14. Staci's testimony would have particular weight on the sudden passion issue because, if anything, Staci would be

more inclined to incriminate Appellant rather than support Appellant's sudden passion theory.

Staci testified that when she awoke to Appellant and Jimmie fighting, that Appellant was missing a boot and had Jimmie's spit on her face. RR 3, 96. She testified that the fight escalated to the point that Appellant actually hit Jimmie in the head with a saucepan and grabbed knives, throwing one of them at Jimmie. RR 3, 96-98.

The next part of Staci's testimony is critical in determining whether the jury's verdict is against the great weight and preponderance of the evidence. After having had a knife thrown at him, according to Staci, Jimmie picked up the knife, handed it back to Appellant and said "you missed me Bitch, try again." RR 3, 98. At this point, <u>Appellant had turned away from Jimmie and was walking away</u> when Jimmie said "go fuck another kid." RR 3, 98. This is apparently what provoked Appellant to spin around and immediately stab Jimmie. RR 3, 98.

Appellant's actions after the stabbing also support the fact that Appellant acted under the influence of sudden passion. Appellant became hysterical, telling Jimmie she was sorry and attempted to get Jimmie up by pulling on his arm. RR 3, 101. These are the actions of a person who acted in a fit of rage and sudden passion, not of someone who planned or

premeditated to kill someone with malice. The burden is that Appellant "more likely than not" killed Jimmie while under the influence of sudden passion. However, Appellant submits that the evidence shows at least by clear and convincing evidence that the murder occurred as a result of sudden passion.

Looking at the facts leading up to, and right after, the stabbing show unquestionably that this was a crime that occurred as a result of sudden passion. This is even more apparent when studying the cases where appellate courts have upheld a jury's rejection of a sudden passion defense.

An example is the *De Leon* case cited herein. In affirming the jury's rejection of the defendant's "sudden passion" argument, the Fourth Court of Appeals noted that right before the defendant stabbed the victim, the defendant told a bystander "well, now this one is going – is going to pay now . . . . [h]e's a son of a bitch." *De Leon v. State*, 373 S.W.3d 644, 651 (Tex. App.—San Antonio 2012, pet. ref'd). The Fourth Court found this statement to be an important fact in determining that the jury's finding was not so against the great weight and preponderance of the evidence to be manifestly unjust. *Id*. This is typical of cases where the appellate court affirms a jury's rejection of a "sudden passion" defense. This sort of evidence is lacking in Appellant's case.

In Appellant's case, Appellant and Jimmie were in a heated argument that had gotten physical. Although Staci says that Appellant was hitting Jimmie with a sauce pan in the kitchen, there was also a physical altercation that took place as reflected by Appellant missing her boot and having Jimmie's spit on her face. There was clearly a mutual combat situation where tempers flared and emotions were running extremely high. The boiling point came when Jimmie told Appellant to "go fuck another kid" and immediately Appellant spun around and stabbed Jimmie in the chest. Although Staci testified that Appellant said "ha, Bitch" immediately afterward, Appellant's and Jimmie's actions after the stabbing reflect that this is a classic case of sudden passion. It seemed that both realized what a huge mistake had just been made as reflected by Appellant's hysteria and Jimmie's statements to Appellant immediately after the stabbing. The jury's finding is so against the great weight and preponderance of the evidence that it is manifestly unjust. *See De Leon*, 373 S.W.3d at 651.

The most compelling evidence that would bear on the "sudden passion" issue is Staci's testimony and Appellant's testimony. Staci was the only eyewitness to the stabbing other than Appellant. While a jury is free to accept or reject witness testimony and to determine the credibility of the witnesses, there are simply no facts which justify a negative finding on

17

Appellant's "sudden passion" issue. Appellant's case should properly have been submitted to the jury as a second degree felony. If the jury accepted the State's evidence (which it apparently did) then it would have to have made a "sudden passion" finding. Appellant was sentenced to a term of confinement of thirty (30) years, which is 10 years more than she could have received if this case had been properly deemed a second degree felony as a result of a sudden passion finding.

There was only one stab wound as opposed to many. Staci testified that Appellant said "ha Bitch, try again" after stabbing Jimmie, but that she immediately became hysterical after she realized that Jimmie was badly hurt. Additionally, Appellant ran out to the street where she knelt by Jimmie's side pulling on his arm attempting to get him up saying she was sorry over and over. RR 3, 124. Jimmie's reaction after being stabbed also lends itself to the crime occurring while in the throes of sudden passion. Jimmie told those around him not to call the cops. RR 3, 100. If this was a situation involving premeditation, it would seem that Jimmie would not have reacted in this way. Appellant also testified that Jimmie told Appellant to run as he lay dying in an apparent reference to Jimmie seeking to protect Appellant's interest. RR 4, 209.

The relationship between Appellant and Jimmie can best be characterized as dysfunctional. Both Appellant and Jimmie were young and caught up in drug and alcohol abuse. This was a tragic event for both Jimmie and Appellant. Although motive is not an element to the offense of murder, it is certainly probative in determining whether the killing occurred as a result of sudden passion. The facts clearly show that this killing occurred as a result of sudden passion. The jury's rejection of Appellant's sudden passion defense is so against the great weight and preponderance of the evidence as to be manifestly unjust.

## II.
***The jury's negative answer to the self-defense issue in the trial court's charge at the guilt/innocence stage of the trial is against the great weight and preponderance of the evidence, i.e., factually insufficient.***

### A.    *Standard of Review*

Texas law categorizes self-defense as a defense, not an affirmative defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). To support a defense like self-defense, a defendant bears only a burden of production, which requires him to produce some evidence in support of his claim. *Id*.; *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces such evidence, the burden shifts to the State, and the State bears the burden of persuasion to disprove the raised defense. *Id*. Unlike the defendant's burden of production, the State's burden of

persuasion requires it to prove its case beyond a reasonable doubt. *Id.* When a fact finder determines that a defendant is guilty, there is an implicit finding rejecting any defensive theory raised by the defendant. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.

When a defendant challenges the legal sufficiency of the evidence supporting a jury's implicit rejection of a defendant's claim of self-defense, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914. When a defendant challenges the factual sufficiency of the evidence supporting a jury's implicit rejection of a defendant's claim of self-defense, the appellate court reviews all the evidence in a neutral light and asks "whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence." *Zuliani*, 97 S.W.3d at 595.

A person is legally justified in using force against another person when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *Tex. Penal Code §9.31(a)*. A person is legally justified in using deadly force against another person when and to the degree: (1) he would have been justified in using force as set out in section 9.31 of the Texas Penal Code, (2) a reasonable person in his position would not have retreated, and (3) he reasonably believed the use of deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force. *Tex. Penal Code §9.32*. "Deadly force" is force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. *Tex. Penal Code §9.01(3)*.

## B.  *Analysis*

The evidence reflected that in the hours leading up to the stabbing, Appellant and Jimmie were intoxicated and that they had been arguing and fighting. Ermalinda Duarte testified for the defense. Ermalinda was the mother of Mikey Lopez, the young man that Appellant was having an affair with. Ermalinda testified that Jimmie called her around 2:45 a.m. on the morning of December 26, 2010 and that Jimmie was very angry and cussing.

21

RR 4, 134. Jimmie told Ermalinda that he wanted to kill her son, Mikey. RR 4, 136-37. Ermalinda said that Jimmie sounded like he was intoxicated. RR 4, 135. Ermalinda also testified that around 5 or 6 p.m. on December 26, 2010, she saw that Appellant had swelling on her cheek and the beginning of a black eye. RR 4, 160. Ermalinda also testified that she was aware that Jimmie physically abused Appellant in the past. RR 4, 138. This is consistent with the testimony of Appellant's mother, who testified that Jimmie physically abused Appellant. RR 4, 167-68.

According to Ermalinda, Staci Leach told her that Jimmie had thrown a knife at Appellant and that it had stuck in the floor and that Appellant was trying to get away from Jimmie. RR 4, 158.

Appellant testified in her own defense. She testified that there was a history of family violence in the relationship with her and Jimmie. RR 4, 193-95. Appellant described the events leading up to the stabbing and said that she was trying to get Jimmie out of her house and that she stabbed him in fear that she was about to be seriously hurt. RR 4, 205-07.

Dr. Lisa Watts, a psychologist who evaluated Appellant and reviewed the facts of the case, testified that Appellant suffered from post-traumatic stress disorder. RR 4, 256. Dr. Watts also testified that based upon her diagnosis of Appellant and her evaluation of the case history that she did not

believe that Appellant intended to kill Jimmie.  RR 4, 265.  It was Dr. Watts' opinion that Appellant acted in fear for her life.  RR 4, 268.

It must be remembered that in conducting the analysis in this case, the Court must not look to whether the State presented evidence which refuted Appellant's self-defense evidence, but rather after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. _Saxton_, 804 S.W.2d at 914.  Appellant would focus this court's attention on the facet of the analysis that reviews whether any rational trier of fact would have found against Appellant on the self-defense issue beyond a reasonable doubt.   Unlike the defendant's burden of production, the State's burden of persuasion requires it to prove its case beyond a reasonable doubt.  _Zuliani v. State_, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

Based upon the evidence submitted, it cannot be said that a jury could find against Appellant on the self-defense issue <u>beyond a reasonable doubt</u>. To support such a finding, the jury would have to reject the testimony of Staci Leach, Dr. Watts and virtually every other witness who testified.  If a jury were to reject this testimony, then it would also follow that the jury

must reject the testimony of these witnesses concerning how the homicide occurred. While a jury is free to accept or reject evidence presented at trial, given the burden of proof applicable to the self-defense, the jury's rejection of self-defense in Appellant's case is not a tenable conclusion to be reached from the evidence presented.

## *CONCLUSION*

Based on the foregoing argument and authorities, Appellant respectfully submits that Appellant's conviction for murder should be reversed and the cause remanded to the trial court for a new trial.

## *PRAYER FOR RELIEF*

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Honorable Court sustain the appellate contentions herein, reverse the judgment of the trial court convicting Appellant of murder and remand this cause to the trial court.

Respectfully submitted,

**M. PATRICK MAGUIRE, P.C.**

 /s/  M. Patrick Maguire
M. Patrick Maguire
State Bar No. 24002515
945 Barnett Street
Kerrville, Texas 78028
Telephone (830) 895-2590
Facsimile (830) 895-2594

**ATTORNEY FOR APPELLANT,
PRISCILLA HERNANDEZ**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of Appellant's Brief to counsel for the State, Hon. Tonya Spaeth Ahlschwede, via electronic transmission at tsa@452da.net, and whose address is P.O. Box 635, Mason Texas 76856, on this the 24th day of December, 2014.

 /s/  M. Patrick Maguire
M. Patrick Maguire